UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 10-52-B-W |
| | ) |
| ALLEN GAGNON, | ) |
| | ) |
| Defendant. | ) |

**ORDER RE: MOTION FOR ORDER TO REOPEN DETENTION
HEARING AND ALLOW RELEASE ON CONDITIONS**

Defendant has moved to reopen the detention hearing in this matter pursuant to 18 U.S.C. § 3142(f). Pursuant to that statute a detention hearing may be reopened at any time before trial if the judicial officer finds "that information exists that was not known to the movant at the time of the [original] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Gagnon's presentation does not squarely fit within that statutory directive. His motion to reopen is more in the nature of a motion to present me with Plan B because I rejected Plan A at the initial hearing, finding that the proposed conditions of release were not adequate because the third-party custodian, Brian Gagnon, resides in close proximity to Canada and has a history of confrontations with law enforcement, and because the offer of a $10,000.00 cash bond would do nothing to alleviate my concern about the risk of flight. (Order of Detention, Doc. No. 15.)

Gagnon now proposes that he live outside Lincoln, Maine, that his sister, Deborah Gagnon McLaughlin, and her husband act as third-party custodians, and that they provide their home, valued free of encumbrances at approximately $50,000.00, as surety for his appearance. It is apparent that Gagnon knew about his sister's potential availability at the time of the original

hearing and his counsel conceded that the major reason this package was not presented to the court in the beginning of March when the original hearing was held was because Gagnon would have preferred to live in his hometown of Van Buren with his brother.  Basically, the information that was not known to Gagnon at the time of the original hearing was that I would not view his brother favorably and that I would question the etiology of the $10,000.00 cash.  I am not at all convinced this sort of showing meets the statutory criteria for reopening a detention hearing.  It is basically just a request for a second bite at the apple.  Nevertheless, I will address the evidence presented at the second hearing.  After reviewing that evidence and again considering the totality of the circumstances, I deny Gagnon's motion to reopen the detention hearing and for release on conditions.

## Discussion

I begin by noting that this case normally would not involve a detention request because the underlying offense does not meet any of the statutory criteria set forth in 18 U.S.C. § 3142(f)(1)(A-E).  Gagnon is charged with drug offenses that carry a *maximum* of *five* years imprisonment upon conviction.  As the United States recognized when it filed its original motion for detention, Gagnon's eligibility for a detention order would only arise under § 3142(f)(2)(A) or (B).[1]  (Doc. No. 4, ¶ 1.)  The United States moved for detention based upon a risk of flight, and in my original Order of Detention I analyzed available conditions of release only through that prism.  The current proposal definitely provides better—albeit in the final analysis unsatisfactory—protection against the risk of flight.  The McLaughlins meet some of my earlier concerns because, as Ms. McLaughlin indicated, their log cabin home is "in the middle of

---

[1] Detention could be ordered pursuant to § 3142(2)(B) if the United States alleged that there was a serious risk that the defendant would obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness.  The United States made no such allegation in its original motion, but § 3142(2) allows the court to consider such circumstances on its own motion and I have considered those circumstances as discussed in the body of this Order.

nowhere" and located some significant distance from the Canadian border.  If Gagnon's electronic monitoring equipment indicated he had left the home, there would at least be enough time to alert law enforcement personnel to begin looking for him before he crossed the border into Canada.  Furthermore, the financial security of pledging a home is normally much more satisfactory than furnishing a large bundle of cash in a case such as this.  I have considered these circumstances in my discussion of the factors I considered when making this decision.  Those factors are, of course, the statutory factors set forth in 18 U.S.C. § 3142(g)(1-4).

   1. *The nature and circumstances of the offense charged*

In considering the nature and circumstances of this offense I have looked beyond the affidavit of probable cause filed in support of the complaint.  A review of the affidavit suggests that the case involves two incidents of distributing modest amounts of marijuana at two separate residences in northern Maine in February 2010.  However, the affidavit also references two anticipatory search warrants I issued on the same date.  Those search warrant affidavits, found at USA v. Caribou, 578 Grimes Road, 10-mj-022, present a much more fulsome picture of the nature and circumstances of this drug smuggling operation.  The probable cause underlying this particular complaint involves a multi-year drug smuggling investigation in Van Buren, Maine, and the surrounding area.  Those affidavits reveal that three or four years ago Gagnon claims to have lost $160,000 that he left in a predetermined location, in a duffel bag along the river, to pay for contraband.  I am aware that in 2005 this court had a case involving a black duffel bag containing a similar amount of cash and that Allen Gagnon claimed that money as his life savings.  See United States of America v. One Hundred Sixty-Five Thousand Five Hundred Eighty Dollars in United States Currency, 502 F. Supp. 2d 114, 117-18 (D. Me. 2007).  The affidavits and the verified complaint in the civil forfeiture action (CV-06-29-B-W), read

collectively, reveal that this offense now before me, while charged as a relatively minor drug offense, actually involved large amounts of money and huge quantities of marijuana. While the United States may not have sufficient evidence at this juncture to charge Gagnon with anything other than the charges made in the Indictment, it nevertheless appears to me that the nature of these offenses is that they were a small part of a much, much larger operation. That fact, in turn, influences both risk of flight and concerns about witness safety.

### 2. *The weight of the evidence against the person*

The evidence against Gagnon on these charges appears fairly strong based upon the affidavit of probable cause. It appears he was literally caught in the act and incriminating evidence was seized both at his home and at the residence where he "delivered" two plastic bags containing marijuana. Additionally, the evidence that Gagnon crossed the border to obtain the marijuana or waited on the United States side while someone brought it to him, though circumstantially based upon footprints in the snow and the existence of the white suit and Proline boots, is highly probative. The weight of evidence in this case, without one word of testimony from an informant or any admission by the defendant, is sufficient to convict Gagnon of the offenses charged. This factor does not weigh in Gagnon's favor.[2]

---

[2] I am also concerned that Gagnon's brother-in-law testified that his willingness to act as a surety was conditioned on his abiding belief in Gagnon's complete innocence without having any real knowledge of the weight or significance of the evidence against him. If the McLaughlins are so blinded by their trust in Gagnon as to believe they need not consider the evidence, then perhaps they have also been somewhat gullible about the risk of accepting the role of third-party custodians. Deborah Gagnon McLaughlin's statement that they would borrow the money to repurchase their home if it were seized by the Government appeared incredibly naïve. I cannot imagine any bank loaning two unemployed individuals, with no savings and no collateral, upwards of $50,000.00 to repurchase a home lost to a governmental seizure. It suggests that either Gagnon has promised the McLaughlins he would provide for any financial loss if anything went awry or that they are indeed naïve to the point of questionable as reliable third-party custodians.

3. *The history and characteristics of the person*

Gagnon does not gain significant traction under this factor. His primary ties to the Van Buren area appear to have been his ex-girlfriend, who according to court documents has become a cooperating witness for the United States, and his drug smuggling business. The evidence establishes that the ex-girlfriend no longer lives in Van Buren and that Gagnon's personal belongings have been removed from that area by her. His drug smuggling operation has presumably been interrupted. Gagnon's brother and sister both live in the United States but both of them have the sort of relationship where they only see Gagnon on occasion and they could certainly travel to Canada to visit with him. Gagnon does have significant ties to Canada including a former wife, real estate, and a Canadian driver's license. It appears he could resume a fairly comfortable life north of the border.

Gagnon has a relatively minor criminal record, but the history of interaction with local law enforcement suggests that he has little regard for either those officers or the orders of the Court. On the latter topic, he has been convicted of violating a release order by contacting a witness while on bail. Though his sentence for that offense was only 60 hours in the county jail, the nature of the offense is disturbing given the context in which it arose. Gagnon has also eluded police officers by not stopping when directed to do so and has become combative with them. The history does not suggest that Gagnon would be likely to comply with this Court's directives any more than he has complied with other directives in the past.

4. *The nature and seriousness of the danger posed by the person's release*

According to the search warrant affidavits, the United States' cooperating witness, Gagnon's former girlfriend, has described Gagnon in terms that suggest he is extremely paranoid, always on guard against police surveillance or other "danger." Furthermore, his son,

as evidenced by the Facebook page submitted into evidence, apparently harbors considerable animus toward the ex-girlfriend.  The situation is serious enough that the United States Attorney has taken measures to relocate the witness out of the Van Buren area.  I do not imagine that such an effort is undertaken lightly.  I am also cognizant that she is not the only cooperating witness or informant identified in the various affidavits.

Although the evidentiary record does not support a clear and convincing finding that Gagnon is an extremely serious danger to the community at large and there is no evidence of firearm involvement in this offense, the situation is exactly the sort of situation that fits under § 3142(f)(2)(B) because I am satisfied that there is sufficient evidence of a "serious risk" to the witnesses and informants in this case.  I am persuaded that Gagnon does pose a serious risk if left to his own devices in that he would likely attempt to obstruct justice or intimidate witnesses if he did not flee to Canada prior to trial.  I reach this conclusion based upon Gagnon's conduct toward his girlfriend in the past, his failure to abide by prior conditions of release issued by the state court, his conduct as exhibited during prior contacts with law enforcement personnel in Van Buren, his apparent ability to manipulate his sister and brother-in-law, and his paranoid behavior regarding his drug smuggling activities.  Obstruction of justice can involve more than threats or intimidation.  It can involve promises of payment to witnesses in return for their silence or it can involve other subtle attempts to tamper with evidence or silence witnesses.  Gagnon's criminal history and the evidence presented to me at the two hearings and disclosed through the public documents on file with this Court persuade me that Gagnon does pose just such a serious risk.  I realize that intimidation of witnesses can take place by third parties even when Gagnon is incarcerated, but if he were released his contacts with others would not be monitored and it would become an even more serious risk for those who have cooperated with the government.

## Conclusion

Based upon the foregoing, the motion to reopen and establish conditions of release is DENIED and my prior order of detention remains in full force and effect.

## CERTIFICATE

This report fairly reflects the actions taken at the hearing and shall be filed forthwith. Any objections to this Order shall be filed in accordance with Fed. R. Crim. P. 59.

*So Ordered.*

April 23, 2010                                   /s/ Margaret J. Kravchuk
                                                 U.S. Magistrate Judge